of America, number 20-3524. And counsel to the appellant, you can take the podium, and would you like to reserve some time for rebuttal? Good morning. Good morning, Your Honor. Yes, I'd like to reserve three minutes of my time. That'll be granted. You may proceed. Your Honor, and may it please the Court, this case presents the question of whether there is any avenue of financial redress for a former prisoner whose constitutional rights have been violated. We think the answer to that question is yes, in part because this is the rare case where the BOP's own documents show that Lawrence Atheos was in federal prison longer than he should have been. I'm not entirely sure. How much extra time did he spend in prison, just out of curiosity? Well, I think that that's still an open inquiry, and I think that's something that the district court should have resolved here. But we would ask the Court to remand to resolve that point because there are a couple open questions on that point in terms of how much time he spent and the overlap between his concurrent and consecutive federal and state sentences, between his time spent awaiting federal sentencing. So I think that that's still an open question, but what's not open is the fact that there was an overdetention. I think that's evidenced by the BOP's own documents. Should the district court be able to address anything more than what Mr. Saffield's put in his administrative grievances, which was that 153 days? Certainly, Your Honor, and I think the answer to that is yes for a couple different reasons. I think the first reason is under this Court's precedent in Barden v. Keohane, that especially for pro se individuals, when they raise questions about primary jurisdiction, when they raise questions about the overlap between federal and state sentences, which Warren Saffield indisputably did, that that in and of itself has been constructively construed, especially for pro se individuals, as a request for retroactive designation, which goes to the point that BOP looked at. I think the second point to that is that the BOP itself, on page 84 of the appendix, says quite plainly that Warren Saffield is requesting, in his administrative proceedings, was requesting a look at the concurrent issue between his federal and state sentences. I think that's the second point. And I think sort of a third point, just to get a little bit in the weeds on the arithmetic, the judge here says, the federal judge says, look, please credit this time. And the only way I think you can credit that time is if the federal and state sentences are, in fact, concurrent. Because if they're consecutive, then the time only goes to the state sentence, and you can't have any time that's split off between both the federal and state sentences. So for those three reasons, Judge Freeman, we think that it is possible to sort of look at the record a little bit more broadly. And you want damages for the time that he spent in prison that he should not have spent in prison, correct? Correct, Your Honor. Is that relief available under 2241? Well, I think that the ‑‑ as we lay out in our brief, I think what would be available here under 2241, if this court were to follow the approach taken by the Eighth Circuit, is to allow for a limited proceeding to move forward to determine the amount of overdetention. That question that Judge Chigar has asked in terms of how much. What's your best case to tell us that damages are available under 2241 for a deceased prisoner? Your Honor, I think the most analogous case on this is a case from the Eighth Circuit, the case being Harris v. McSwain. Now, I want to preface this that that case doesn't allow damages in habeas proceedings, but it does allow ‑‑ Right, I'm asking which case does. What Supreme Court decision or Third Circuit decision or other court of appeals decision says that a deceased prisoner can get money damages under 2241 for excess time spent in prison? Well, to unpack that a little bit, Judge Hardiman, I think that the cases essentially say that a habeas proceeding is often considered a predecessor to damages. We would never say that. Right, so we don't have jurisdiction. We should dismiss for lack of jurisdiction, and then you can go ahead and file a Bivens action or whatever civil rights statute might be availing to the executrix of the estate, right? Well, I think it depends. It depends. I think in the Eighth Circuit's approach, as we outlined in Harris v. McSwain and Leonard v. Nix, allows for a very limited habeas proceeding to determine the amount of overdetention followed by a Bivens or a 1983 action. I think the alternative that you outlined is to allow to suspend the favorable termination requirement, which I think is the approach taken by most courts on this issue. Respectfully, we think that this is an ideal opportunity for the Court to outline these dueling approaches and to specify which ‑‑ But that presupposes we have jurisdiction, and I don't see how we have jurisdiction here. Certainly, Your Honor. And I think that the question of jurisdiction lies in the term. I think it's sort of a mishmash of sort of mission product, which says that if there's any avenue of effectual relief, and here the avenue of effectual relief sort of comes through eventually a 1983 or a Bivens action. But for the time being, in order to have that action be available and to be viable, one needs to understand sort of the exact length of overdetention. Well, but that's going to be adjudicated in the next case that you file on behalf of the executrix, right? Certainly. That would be a factual issue that would need to be hammered out in the context of discovery in that case, right? That whole process is not a habeas case. That's what I'm suggesting. Yeah, let me back up. How am I mistaken about that? Certainly, Your Honor. I think that that is one approach that is taken, as we've outlined in our brief, to dismiss this action and to allow for a Bivens action or a 1983 action to proceed. I think the concern that we have is that this is an ideal opportunity for the Court to sort of clarify whether the 1983 or Bivens action can proceed as a matter of law and is not foreclosed because of other precedents from this Court. But as Judge Hardiman says, I mean, well, isn't this just a simple application of our opinion in Keitel, we dismiss, and then the next case is where you take up your Bivens case that you may file? That's where you take this up? Certainly. I think there are a couple different approaches, Your Honor. I think one approach is to dismiss this case under Keitel. But that said, I think Keitel doesn't necessarily grapple with the exact circumstances here. I think this is the rare case where you'll see evidence from the government that says was over-detained for some period of time, and all we're asking for is a limited remand to just determine the amount of over-detention. I don't think that Keitel, of course, announces general rule. I don't think it necessarily speaks to every single circumstance, especially a rare circumstance like this case. Can you help me get through how we could get around our decisions in Gillies v. Davis and Williams v. the question of whether there would be a heck bar in these circumstances and decided in a way that is unfavorable to your client? Certainly, Judge Freeman. I think that the Gillies and Williams can be reconciled with the cases from the Fourth and the Sixth and the Ninth Circuits because what those circuits hold is that you can suspend the favorable termination bar, but only if you exercise diligence and habeas. Only if you actually file a habeas action when you have an opportunity to do so. Whereas the plaintiffs in Gillies and Williams, neither of them filed a habeas action. They sort of sat on their rights. And, you know, if you map on that diligence requirement to this case, it's clear that, you know, no one disputes that Lawrence Safios timely filed his habeas action, that it was a proper action when filed. And just like those plaintiffs in the Fourth and Sixth and Ninth Circuits, his action, you know, the availability of that action has turned on questions and circumstances outside of his control. So I think the diligence requirement is one distinction between Williams and Giles, which neither of those cases addressed. I think the second distinction that we point to is that if you look at Spencer, if you look at Williams, and if you look at Giles, I think they all go under the same line of cases, which is they deal with probation or probation's close cousin, parole. Whereas I think this has to do with, you know, the core of sentencing law and applying sentencing law to sentencing facts. So I think that those distinctions help safeguard us and ensure that we can reconcile Gillies and Williams with the present case. But in Gillies or Giles, I'm not sure how to pronounce it, that, you know, the court walked through Spencer versus Kemna and said, you know, we understand that five justices in Spencer expressed some views about the heck bar. But, you know, we're not going to go, like, the Supreme Court can overturn heck if it wants to. We're not going to. And we find a heck bar. So how, I mean, that logic really transcends the diligence of any petitioner, doesn't it? Well, I'm not sure it does because it doesn't speak, given the facts in Gillies itself, it didn't really speak to the diligence requirement. It didn't have an opportunity to do so. Even then, I think, Your Honor, you know, Gillies is, in fact, preceded by Torres versus Thalber from this court. And on 292 F. 3rd 145, in that case, this court notes that five justices, the majority of the court, rejected the Spencer language of a great non sequitur as dicta because, quote, former prisoners who cannot seek habeas relief can bring a Section 1983 claim without satisfying the favorable termination rule. And I think I'd bring up Torres to sort of illuminate the fact that this is actually much more of an unsettled question than I think some of the language in Williams and Giles would suggest. In fact, I think a case preceding Williams and Giles goes the other way. I think the fact that there's a diligence requirement that wasn't addressed in Williams and Giles also points the other way. And I think, as we've noted, sort of the similarities between Williams and Giles and the question about probation and parole likewise point the other way. So for those reasons, I don't necessarily think that the language in Williams and Giles is necessarily binding on this particular case. I have a question. I can't help but notice that the respondent here is the United States of America. Generally, in a habeas case, doesn't it have to be the warden? Certainly. And so do we have an improper respondent here? And is that a jurisdictional problem? I think it could be, Your Honor. I think that, you know, of course this case has been litigated pro se before we were appointed. Right. And certainly if this were back in the district court, I think that that is a fairly important but essential but I think straightforward substitution that we would move for. I think that that's not something – I doubt that that's something opposing counsel would oppose. And at the same time, I think in terms of the arguments made, the substantive points that we've made in our brief, I don't think that would really change for either side. I do want to get back – Which warden would have to pay the damages? Your Honor, I don't want to speak out of pocket on this point, but I think it would likely be the warden that over-detained him, which would be the individual in the Middle District of Pennsylvania. That is my understanding, but I would have to double-check that point. So I don't want to speak out of pocket. I think, Your Honor, if I can just briefly conclude before – and I want to just return to Judge Hardiman's line of questions about whether this case is in fact moot and whether there's a jurisdictional issue. Respectively, we think this case provides the Court an ideal opportunity to say what the law is. And we've outlined a couple of different approaches that we think are viable. And we think that the best approach forward is to, in fact, grapple with these approaches. And if neither approach is available to Lauren Saffield or here, Laura Lee Hartwell, to pursue, then to make that clear and to grapple with the constitutional avoidance questions that we elaborate upon in our brief. Thank you very much. Thank you. Thank you. Good morning. May it please the Court. Michael Butler on behalf of the United States of America. Your Honor, this case is moot. This case is moot either because Mr. Sapples was released or because he's unfortunately passed away, and our condolences to the family. Mr. Sapples was required to provide or state collateral consequences when the United States or the government, actually the respondent should have been, the warden, when the government said that this case was moot. Mr. Sapples did not. Mr. Sapples objected. He did not say that my supervised release is going to be an issue. He did not say I needed damages. If you look at pages 82 and 83 of the appendix, this is an objection to dismissal. And under Spencer and all the line of cases in this court, collateral consequences are not presumed. You have to state them. Mr. Sapples did not. There were some unusual circumstances, right? I mean, he's made submissions to the court explaining that he was released at the last minute during the COVID pandemic and sent to Sioux Falls where he knew no, you know, and so, and he was pro se, of course. So shouldn't we make some allowances for that? He was never invited to proffer any collateral consequences and prove them. Well, Your Honor, he does make some statements about that. But he certainly has filed a lot of documents since then and he has never said in his statements, Mr. Sapples himself never said that I want some relief from supervised release. And I think that supervised release is probably off the table. Unfortunately, Mr. Sapples has passed away. So we'll take those collateral consequences off. But let's talk about the damages. If you look at document 10 and document number 22 that he filed in this particular court, his statements are, I'm not looking for damages. In page 22, in document number 22, he said. He specifically disavowed that. Yes. But does that bind Hartwell, though? I think so, that she's substituting as a party. She's standing in his shoes. She's saying that, you know, he should have had damages for the excess time he was incarcerated. But Mr. Sapples had the obligation to assert these collateral consequences. They're not presumed. Spencer says it goes hand in hand with Article III jurisdiction. You have to assert these. The whole issue, though, I mean, why would we decide the case on that ground when his passing seems to be a much simpler way? Isn't it true that the line of argumentation you just made opens up some potentially tricky questions regarding supervised release as being the tail of a sentence? I mean, supervised release is part of the sentence, right? So if, you know, he spent 150 days or however many days he spent in prison that he there's a possibility that his supervised release term should have been shortened by a like amount. Isn't that at least a possibility? Well, I'm not sure about that, Your Honor. I really couldn't speak to that. I don't think so. And because you're right that this case really hinges on the fact that he died under Tytel. And even as recently as Northern District in New York, we didn't get a chance to Westlaw 866-04-81. Most recently stated that when an inmate dies or when a petitioner dies, the habeas corpus is done. I found a Supreme Court case. It was a footnote. But Lockhart v. McCree, 476 U.S. 162-168-02. When a habeas petitioner died prior to the district court's decision, his case becomes moot. I agree. That's the easier way to. It is the easier way. You just need to dismiss for mootness because of his passing, right? Absolutely. And the idea that he may be able to file some other action, that would be us giving, sorry, Your Honor, us giving an advisory opinion that he can file some action in the future. Let him try. I mean, that's the case that he's got in the future, not what he has right now. This is not a case of financial redress, as the professor said. This is a habeas action. Mr. Sapples passed away. The case is moot. Well, but as your adversary points out, it may not be directly a damages case, but it could be a threshold to the ability to pursue damages. How do you deal with that? Well, he's, unfortunately, as Spencer said, not every action has a remedy. 1983 isn't available for everyone. In fact, Bivens is probably not available for him either. I mean, there's a bossy. I don't know how he's going to get past that. We don't even know who the defendant is in this case. So is it possible? Is it probable under mission product? I don't know because they haven't asserted it. That's their obligation, to assert collateral consequences. They have not done so. Is it your office's position still that despite our observation in Scripps and despite the relief could be enough, that in a future case that Berkey would still govern? So, Your Honor, I recognize that the mission product has sort of led Berkey to have some sort of, the reasoning in Berkey is sort of not as clear as it may have been. So I'm not going to give you my, I can't give you my position as to mission product and look at Spencer and Spencer being a habeas action and mission product being a damages action. As late as this past year, the 11th Circuit and the 2nd Circuit are still following Spencer for collateral consequences analysis. But that being said, we are citing Berkey for the position that you have to state collateral consequences. It's not presumed. That's what our argument was in our briefs, that it's not the likely or unlikely language. It's the idea that Mr. Sapples had to state collateral consequences. I was understanding Berkey should be standing for the distinction between the challenged sentence of imprisonment and the term of supervised release, which could be altered later, right? So my understanding of your position about the initial mootness question was that because he did not challenge his term of supervised release, then there was no possible avenue for relief. Is that still the position? It's because Mr. Sapples at the time, Berkey stands for the proposition, or Berkey is reasserting the position that's been in this court, in Cotman and Jackson and Johnson, that they are not, the collateral consequences are not presumed. Because he's not challenging the federal court sentence, because he's just challenging what the BOP is doing, the execution of the sentence, that he has to prove or at least state what those collateral consequences are when there's a mootness argument made. That's all. Thank you. We have a couple of minutes. I'm interested. Is there a cause of action for excessive damages under current law? I'm sorry, excessive incarceration? So I cannot give you the position of the Department of Justice, but if you look at Carlson and Davis, they're not, it doesn't fit in those two categories, and it's definitely not a Bivens category. They've made a statement about Carlson, and there's sort of a, some sort of reasoning in Carlson, but Carlson involves medical malpractice. This is an excessive imprisonment. There's been no cases since Havasi. All right. Thank you, counsel. I'm sorry. Just following up from our conversation one minute ago. So, and I'm thinking through your position on the Berkey, but is, are you saying that supervised release in this context would be a collateral consequence as opposed to a part of the sentence that Mr. Saffield was subject to? So I think there's a distinction made in Berkey and other cases where when, when a petitioner is challenging his sentence, and they're challenging the whole sentence, so the whole sentence would also include the supervised release, and that would be from the sentencing court, then the supervisory release would not, would be part of the sentence itself. But Mr. Saffield here is not doing that. Mr. Saffield is challenging what the BOP did in executing the sentence, and I think the question is to distinguish what the sentencing court does and what the BOP is doing. Okay. And because of that distinguishing, then the supervised release would be a collateral consequence in your view? It would have to be, he would have to assert it. He would have to state that my supervised release, there's a collateral consequence, and it's possible, or whatever the language is, a mission product, or you want to use Spencer, he has to assert that in some document, and he didn't. Thank you. How about the improper respondent potential problem? I think that is, I think that is, I think that is a problem, and I think that that happens a lot in our courts and other courts, that we don't have the proper respondent, the, we footnote in our respondents that the proper respondent is the warden, but the caption isn't reflected that. What's the effect of it, though? Well, if you're suing the, if you're, Is it something that's waivable? I don't know that, Your Honor. I think that's something I'd have to research, but I think that's an issue. I think that if you go this far, I mean, that we've got to have a proper respondent at some point, and it's not been asserted. Okay. Thank you, counsel. Thank you very much. We'll hear from your friend. Your Honor, three very brief points in rebuttal. The first point on the question of alleging damages or alleging supervised release, I think that you made it very clear that in our opening statements that damages aren't available in habeas, so as a matter of law, it would have been premature and irrelevant to even ask for those things. So I think that, and sort of to impose that requirement in a case like this, I think, doesn't make sense and is inconsistent with the law. I think the second point that I'd raise is sort of to Judge Hardiman's questions and some of the back-and-forth with opposing counsel about whether this would be an advisory opinion. And respectfully, we don't think it would be, and I think that one need look no further than the Spencer, Hecht, and Pizer line of cases. In each of those cases, the Court dealt with habeas, but it also discussed the availability of 1983 in damages, given how intertwined these two requirements actually are. Did any of those cases involve a decedent, though? They did not, Your Honor. And the case that does involve a decedent is Keitel, right? Keitel is the case that involves the decedent. That's correct, Your Honor. That's binding law of the circuit, written by our now Chief Judge. Well, I would never doubt the wisdom of Judge Chigars, but I think that Keitel announces a general rule, and in many circumstances, I think that general rule would apply. But I think this is a rare case where we see the BOP's own documents evidencing and reflecting overt attention, and all we would ask is for very, very limited and narrow exception, if the Court is inclined to do so, to that general rule in Keitel. I think more broadly, though, the question is whether or not there is any avenue of relief for Ms. Hartwell at this point. And I think that brings me to my final point, which in the discussion with opposing counsel, there was a discussion about the availability of Bivens and whether he would succeed or whether she would succeed in Bivens. And I think we want to be very, very clear to this Court that we do not believe that ruling in our favor would entitle Laura Lee Hartwell to damages or mean that she would ever get damages. I think there are many, many, many barriers between that day and this day. But I think because the evidence reflects and the government doesn't dispute over-detention in this case, that at the very, very least, Mr. Safios can ask for a proper accounting. And that's all we are asking for, a proper accounting of his over-detention. And I think the gateway to doing that is to outline the availability of options for him to do so and then for him to promptly seek a 1983 action or a Bivens action if that is allowed. For all those reasons, Your Honor, we respectfully request that this Court. I have a question for you. You rely rather heavily on the Eighth Circuit's opinion in the Leonard case. Yes. The next year, though, the Eighth Circuit issued an opinion, McMillan v. Bowersox, which seemed to go the other way. How do you square – is Leonard good law? And how do you square the subsequent case? Well, I think Leonard is good, if I can – Go, go, yeah, by all means. Yeah, I think that we can square those two cases because I think the subsequent case doesn't, in fact, overrule Leonard in any way. And I think Harris v. McSwain, which also dealt with – which I'm happy to provide the Court a citation – Harris v. McSwain makes clear that for a former prisoner who's out of custody, they can conclude a limited cabious proceeding before seeking 1983 relief. Now, I think to – I know we're going back and forth on this point, Judge Hardiman, but certainly the petition in Harris was not deceased. But I think as a former prisoner out of custody versus a former prisoner who's passed away, I think the legal consequences are one and the same. And that is why we think that the Eighth Circuit provides guidance, if this Court were so inclined, to allow this – allow a limited cabious proceeding to proceed. If it were disinclined to do so, again, I think the alternative pathway is to suspend the favorable termination requirement. Okay. Thank you, counsel. Thank you. We thank counsel for their excellent oral argument and briefing. We'll take the case under advisement. And we'd also like to thank, in particular, Mr. Wang and the Northwestern University Pritzker School of Law Appellate Advocacy Center for taking this case on pro bono. So thank you.